Wardle vs. Railroad Company.

No. 8309.

Mrs. Ann Maria Wardle vs. The New Orleans City Railroad Company.

A degree of attention, beyond that given to an ordinary passenger, should be bestowed on one known to be affected by a disability, by which the hazards of travel are increased.

It is the duty of a street car driver to give passengers a reasonable opportunity to alight. Where he does not stop a sufficient time, and starts before the passenger has stepped off, it is negligence.

For injury sustained, not only actual, but prospective damages should be allowed approximatively, in the exercise of a sound discretion. In such a case the liability of the Company is indubitable.

A PPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*W. B. Lancaster* and *J. McConnell* for Plaintiff and Appellee :

1. Cases illustrative of negligence in street car drivers, in not giving passengers a reasonably safe opportunity to alight, by starting before the passenger has stepped down : Mrs. Howell vs. St. Charles Street Railroad Company, 22 An. 603 ; 61 N. Y. 621 ; 30 N. Y. 370, 373 ; 49 N. Y. 673 ; 49 N. Y. 671.

2. If a passenger is known to be in any manner affected by a disability, physical or otherwise, by which the hazards of travel are increased, a degree of attention should be bestowed to his safety beyond that of an ordinary passenger. Thompson on Carriers of Passengers, page 270, Section 5.

3. The plaintiff in an action for an injury to his person may recover not only the damage he has sustained up to the time of bringing the suit, but also all the prospective damages which the evidence renders it reasonably certain must necessarily result from the injury. Thompson on Carriers of Passengers, page 564, Sections 19 and 565, Section 20.

4. No exact computation can be made for damages due to the plaintiff ; and in cases of this kind much discretion is left to the Judge or jury in the assessment of damages. Mrs. Howell vs. St. Charles Street Railroad Company, 22 An. 603 ; Choppin vs. C. R. R Co., 17 An. 19 ; C. C. 1934, (1928) No. 3.

*Braughn, Buck & Dinkelspiel* for Defendant and Appellant :

1. To recover damages from a railway company for injuries received, it must appear : that the injury was occasioned by the negligence of the company or its driver ; that there was no want of care, nor imprudence on the part of the plaintiff, by which the injury was in any manner brought upon her. 11 An. 294 ; 9 An. 441 ; 20 An. 462 ; 30 An 15.

2. If the plaintiff contribute to the disaster she cannot recover, though the Company be also at fault. 17 L. 361 ; 32 An. 615 ; 33 An. 154 ; 30 An. 15.

3. If both parties are in fault neither can recover damage from the other. 18 L. 339 ; 3 An. 48, 441 ; 6 An. 490 ; 11 An. 292 ; 23 An. 462 ; 27 An. 53 ; 5 Otto, 700.

4. A person who is old and infirm is guilty of culpable negligence in taking risks which might very properly be assumed by a young, healthy and vigorous person. Sherman and Redfield on Negligence, 630, 648.

5. The Company is not liable for injuries received by a person alighting from the car before it has stopped. 22 Pa. St. 147 ; 56 N. Y. 302 ; 63 N. Y. 556 ; 86 Ill. 467 ; 106 Mass. 463.

The opinion of the Court was delivered by

Bermudez, C. J. The plaintiff sues to recover $15,000 for bodily injuries sustained through the alleged carelessness of the driver of a

Wardle vs. Railroad Company.

street car in which she was a passenger and belonging to the defendant Company.

The defense is a general denial and contributory negligence.

The case was tried by a jury who rendered a verdict for $5,000. From a judgment in accordance, the defendant has appealed.

The plaintiff was a woman, sixty odd years old, and weighing 260 pounds, when the accident occurred. She was travelling as a passenger at the time, in broad daylight, on a car belonging to the Company, driven by a man in its employ for the special purpose. The car was progressing up Magazine street and was about crossing Jackson street, when she gave the usual signal to stop. The car actually stopped. Two colored women came in when the plaintiff was about to get out. After they had entered the car plaintiff moved on to get out of it. She placed a foot on the step, turned around and grasped the stancheon or handle. She was about to alight when the driver turned the brake off and the car started suddenly. She then cried to the driver to hold on, but he kept on, some fifty feet, until forcibly yielding to the *momentum* of her bulky, massive and unwieldly person, or body, she was shaken off by the jolting of the vehicle, and losing her balance, was thrown prostrate on the square block pavement of the street, nearly twenty yards above the intersection with Jackson street.

She was then picked up and assisted to a doctor's office and afterwards removed to her own residence, where she received attention. The injury sustained on the occasion resulted, from a straining of the arm and from the bruises of her body, in a progressive paralysis which must shorten her life, terminating with complete paralysis. The course of the disease is declared to be *scirrhosis*, or a degeneration of the spinal cord. It creeps until it affects the lower portion of the brain. When that takes place it ends in death. The physicians of the plaintiff were heard. They say, the one, that he doubts very much whether she can live three or four years; the other, that he does not think that she will live two years.

We attach no importance to the fact that the suit was once tried by a Judge *alone*, who rendered judgment for the defendant, as on the second trial, the case was decided on evidence which had not been previously produced. On a motion for a new trial, based on newly discovered evidence and determined favorably by a different Judge, the first judgment was set aside and the matter submitted to a jury, who returned, as stated, for plaintiff.

The facts of the case, as found by us, are established by four disinterested eye witnesses, besides the plaintiff and exclusive of the two physicians.

Their testimony is apparently contradicted by the two witnesses heard for the defense, who had testified on the first trial, before the Judge who passed upon the case alone. Those witnesses are the car driver and another of the same calling. The testimony then heard and offered to impeach, materially conflicts with that given by them before the jury. It is probable that the jury, if they believed those witnesses, did not consider any less than we do, that testimony of sufficient weight to impugn, in the least, that adduced by the four witnesses on behalf of plaintiff.

We do not consider that the defense of contributory negligence has been established.

The driver was grossly at fault in not doing that which he should and could have done. He should have waited till the plaintiff had alighted before starting anew. The plaintiff could not be required or expected to have acted differently from what she had. It was physically impossible for her to have counteracted the headway under which her body had been impelled.

While the doctrines of law invoked by the defendant are of undoubted soundness, it cannot be questioned that the principles relied upon by the plaintiff are equally so.

In a case almost identical, which occurred in this State, reported in 22 An. 603, it appeared that while the plaintiff was getting out and was standing with one foot in the car and the other on the step, the driver let go his brake and started suddenly and rapidly forward, in such a way as to fling her down on the pavement. The jury returned a verdict of $6,000, and both the lower and appellate courts, applying the law, confirmed it.

In the case of Mary Poulin, 61 N. Y. 621, presenting an analagous state of facts, the Court held, that it is the duty of a conductor of a street car to give passengers a reasonable and safe opportunity to alight. He must stop the car for a reasonable time to enable the passenger to do so, and if he starts before the passenger has stepped down or had reasonable time for that purpose, it is negligence. See 49 N. Y. 671, 673; 50 N. Y. 370; 38 N. Y. 131; 75 Pa. 83; also, Thompson's Carriers of Passengers, p. 443, Sec. 3.

If a passenger is known to be in any manner affected by a disability by which the hazards of travel are increased, a degree of attention should be bestowed to his safety beyond that of an ordinary passenger. 36 N. Y. 39; Thompson on Carriers, p. 270, Sec. 5.

In the computation of damages in cases like the present one, it is impossible to arrive at an exact result. Not only the damages sustained up to the institution of the suit, but also those which the evidence shows to be reasonably certain, should be taken into consid-

eration. Both actual and prospective damages should be allowed, approximately, in the exercise of a sound discretion. Thompson on Carriers, p. 564, Sec. 19; p. 565, Sec. 20; 22 An. 603; 34 An. 177; 23 An. 180; 17 An. 49; 23 An. 180; C. C. 1928, No. 3.

The plaintiff was a midwife by avocation, had an extended lucrative practice. She is now permanently disabled and deprived of the power and advantages of locomotion and of the earnings of her calling. She remains subjected to constant, protracted physical suffering and moral anguish, necessitating regular attendance and treatment. Her life is saddened with the gloomy ghost of death staring her in the face, steadily and mercilessly advancing upon her.

In the Howell and Peniston cases, 22 An. and 34 An., six thousand dollars were allowed.

We do not feel authorized to disturb the verdict rendered in this case.

The liability of the defendant Company, under the circumstances, is indubitable.

Judgment affirmed.