CLARK v. TRACTION CO.

(Filed April 11, 1905).

*Street Railways—When a Passenger—Duty of Conductor— Care due certain persons—Premature Starting—Instructions—Damages.*

1. The plaintiff boarded defendant's street car, paid his fare and received a transfer and alighted at the usual transfer place, and when the car which he desired to board, stopped for the purpose of taking on passengers, he approached the car with other passengers and at the time of the injury was in the act of stepping on the car, held the plaintiff was a passenger.

2. Where the evidence is practically undisputed and a reasonable mind can draw only one inference from it, it is the duty of the trial judge to instruct the jury, if they believe the evidence, to answer an issue as to negligence "Yes" or "No."

3. Where the evidence showed that the plaintiff was injured by the starting of a street car without warning, when he was in the act of boarding it at a regular stopping place, and that the conductor was not on the platform, an instruction that if the jury believed the evidence, they should find the plaintiff was injured by the defendant's negligence, was proper.

4. When a street car stops to receive passengers, it is the duty of the conductor to be at his station on the platform where passengers are in the habit of boarding the car, and to give them such assistance as is necessary, in getting on and off the car, and to see that the car is not started until reasonable time has been given intending passengers to get safely on the car.

5. It is the duty of a street car conductor to know before he starts his car whether any person is in the act of getting on or not, and if he is busy, it is not enough for him to wait a reasonable time for passengers to board the car, but it is his plain duty to look and see that intending passengers are safely on board before signalling the motorman to start.

6. The sick, lame, children and aged persons are entitled to more care and attention from conductors than ordinary passengers. They should be allowed more time in which to get off and on the car and to secure a safe position therein.

Clark v. Traction Co.

7. In an action for personal injuries, an instruction authorizing a
recovery of damages for actual suffering of body and mind, for
actual nursing, medical expenses and "loss of time or loss from
inability to perform ordinary labor or capacity to earn money"
was proper.

ACTION by W. Y. Clark against the Durham Traction
Company, heard by *Judge Henry R. Bryan* and a jury at
the October Term, 1904, of the Superior Court of DURHAM
County.

This was a civil action for the recovery of damages for
injury by the negligence of the defendant. The Court sub-
mitted the following issues: 1. Was the plaintiff injured
by the negligence of the defendant as alleged in the com-
plaint? Ans. Yes. 2. If so, did the plaintiff by negligence
on his part contribute to said injury? Ans. No. 3. What
damages, if any, is plaintiff entitled to recover? Ans. $500.
From a judgment for the plaintiff, the defendant appealed.

. *Winston & Bryant,* for the plaintiff.
*Manning & Foushee,* for the defendant.

BROWN, J. The first proposition which is presented by
several of the exceptions of the defendant brings up the
question as to whether or not the plaintiff was a passenger
on the defendant's line at the time of the injury sustained by
him. The Court charged the jury if they believed the
evidence in the case to be true to find that the plaintiff was a
passenger. In this instruction we see no error. The only
testimony upon this point is that of the plaintiff himself and
the testimony of the defendant's witness, Sorrell. We see
nothing in the testimony of the latter tending to contradict
the statement of the plaintiff as to his relation to the
defendant company at the time of the injury. The plaintiff
stated that he boarded the street car of the defendant in East
Durham, paid his fare, received a transfer for the Mangun

Street line, and was brought to the Mangum Street connection; got off at the crossing of Main and Mangum Streets for the purpose of boarding the other car and attempted to do so.    The car stopped at the usual place for the transfer of passengers.    Two men preceded him and boarded the car successfully.    Plaintiff followed immediately behind, got hold of the rod on the west side of the vestibule at the end of the car with his right hand and put his foot on the steps of the car.    Before he got his weight entirely on the car it started.    At that time he had his right foot on the steps of the car and his right hand on the vestibule rod.    No warning was given.    The conductor was not present at that end of the car.    Plaintiff says he saw the conductor sitting close to a young lady.    No one helped him on the car.    The car started suddenly and jerked the plaintiff down on the pavement.    These uncontradicted facts, we think, justify the Court in charging the jury that if they believed them to be true plaintiff was a passenger on the defendant's line.    It is the settled law in this State, so far as steam railroads are concerned, that when a person comes upon the premises of a railroad company at the station and has a ticket, or with the purpose of purchasing one, he becomes thereby a passenger of the company.    *Tillett v. Railroad,* 115 N. C., 665; *Seawell v. Railroad,* 132 N. C., 859.

The authorities in other States, where electric lines are more extensively operated than in this, all go to show that the same principle is applied to the operation of surface railroads whether operated by steam or electricity.    The plaintiff had purchased a ticket, that is to say, he had paid his fare, and had boarded defendant's line in East Durham, and while on the car had received a transfer from one portion of the line to another.    He got off at the usual place where passengers alight for the purpose of boarding the other car.    The Mangum Street car, which the plaintiff desired to board, stopped for the purpose of taking on passengers.    Plaintiff,

with his transfer in his pocket, approached the car with two other passengers, and at the time of the injury had one foot upon the steps of the car and his right hand hold of the rod. These facts plainly make him a passenger. Mr. Joyce, in his work on Electric Law, Sec. 528, says: "A passenger on a street railway is a person whom the company has undertaken to carry by virtue of a contract, express or implied. To create the relation of carrier and passenger it is not necessary for one to have entered the car, but the relation may exist before a person has actually boarded a car." It has been held in several cases where a person had obtained a transfer ticket from one car which entitled him to ride on another car of the defendant company, and he had approached the car, standing to receive passengers, when the car started and he was thrown to the ground that such person is a passenger. *Washington & G. Ry. Co. v. Patterson,* 9 App. D. C., 243; *St. Ry. Co. v. Kaspar,* 85 Ill. App., 316; *Keator v. Traction Co.,* 191 Pa. St. 102.

The person in transferring from one car to the other is still a passenger, the transfer being but a part of the trip for the whole of which the company agrees to convey in safety.

Was the defendant company guilty of negligence? His Honor instructed the jury if they believed the evidence to answer that issue "Yes." In this instruction we are likewise unable to discover any error. The evidence in the case was practically undisputed, and we do not see how any reasonable mind can draw more than one inference from it. In addition to what we have already quoted from the plaintiff's testimony, he testified that when he put his right foot on the steps of the car and before he get his weight on his foot the car started. No warning was given; he was jerked on the pavement; his shoulder was hurt; his leg was twisted and knee hurt, and he was dragged eight or ten feet before he got loose. The car then ran fifty or one hundred feet, and then came back. No one helped him on the car.

The conductor was not on the platform. After he was hurt he took the car and went on to his destination. After he reached home he went to bed and stayed four or five weeks. He suffered great pain and has used crutches ever since. Sent for the doctor. He further testified that before he was hurt his condition was as good as most men of his age. That he is eighty-four years old. That he did not use crutches before his injury but had walked with a cane for twenty-five or thirty years. That he was on the west side when the car came up and motioned his hand to the motorman. Did not hear any bell. As he took hold of the handle of the car it started. He testified that Mangum Street is a regular stopping place for the transfer of passengers. We see nothing in any of the testimony for the defendant which at all tends to contradict or modify in any way the plaintiff's testimony. Inasmuch as only one inference can be drawn therefrom, it was plainly the duty of the Judge to instruct the jury as he did. Clark's Code, (3rd Ed.) 531; *Chesson v. Lumber Co.,* 118 N. C., 67.

When the car stopped for the purpose of receiving passengers either from the street or those transferred from other cars, it was plainly the duty of the conductor to be at his station on the platform where passengers are in the habit of boarding the car. It was his duty to give them such assistance was necessary in getting on and off the car and to see to it that the motorman was not signalled and the car not started until reasonable time had been given the passengers there assembled, who manifested intention to get on the car. The authorities show that if a street car has stopped for the reception of passengers, or if an intending passenger has signalled it to stop and has put his foot upon the step of the car in the act of getting on and is injured by a sudden starting, he will have the right to damages for his injury, whether the servants who started the car knew that he was in the act of getting on or not. Such person is entitled

CLARK *v.* TRACTION CO.

to the care due a passenger and it is the conductor's duty to know before he starts his car .whether any person is in the act of getting on or not. If the conductor is busy, it is not enough for him to wait a reasonable time for passengers to board the car, but it is his plain duty to look and see that intending passengers are safely on board before signalling the motorman to start. Thompson's Law of Negligence, Sec. 3514; Clark's Street Railway Accident Law, page 54; *Cohen v. Ry. Co.,* 60 F. R., 698.

In the latter case it is said: "The conductor of street cars is bound to know, when he starts his car suddenly and with full force, that no person attempting to embark is at that moment with one foot on the platform and the other on the ground, and with his hand upon the railing, in the act of getting on board, or is otherwise in a position of danger."

The adjudicated cases fully support the views of the eminent text writers above cited. *Dudley v. Cable Co.,* 73 F. R., 129; *Terminal Co. v. Morris,* 44 S. E., 720; *Akersloot v. Ry. Co.,* 15 L. R. A. (N. Y.) 489.

In *Akersloot v. Ry. Co., supra,* the New York Court says: "The conductor of a street car must see that a passenger entering the car is in a place of safety before he gives the signal to proceed, and the passenger is entitled to damages if he is thrown down and injured by the premature starting of the car."

"It is the duty of a conductor, before giving the signal to start, to look around and see that all passengers to take passage at that place are safely on board, and failure so to do is not excused by the fact that he does not see an intending passenger. The passenger has a right to rely upon the care and protection of the company's employees and he is not bound to prepare for or even anticipate a sudden and unexpected start of the car which may throw him upon the ground." Nellis on Street Surface Railways, page 461.

The authorities are all to the effect that a degree of

attention beyond that due to ordinary passengers should be bestowed on those affected with a disability by which the hazards of travel are increased.    The sick, the lame, children and aged persons are entitled to more care and attention from those in charge of a car than those in full possession of their strength and faculties.    They should be allowed more time in which to get on and off the car and to secure a safe position therein.    *Sheridan v. Ry. Co.,* 36 N. Y., 39; *Wardle v. Ry. Co.,* 35 La. Ann., 202; Booth on Street Railways, Sec. 330.

These authorities seem to settle the question beyond any doubt that the plaintiff was not only a passenger upon the defendant's line, but that, if the evidence is believed to be true, he was injured by the negligence of the defendant's employees, and, therefore, is entitled to recover damages for his injury.

His Honor instructed the jury that "in this class of cases the plaintiff is entitled to recover as damages one compensation for all injuries past and prospective in consequence of the defendant's wrongful or negligent acts.    These are understood to embrace indemnity for actual nursing and medical expenses and loss of time or loss from inability to perform ordinary labor, or capacity to earn money.    Plaintiff is to have a reasonable satisfaction for loss of both bodily and mental powers or for actual suffering both of body and mind which are the immediate and necessary consequences of the injury."    The defendant excepted to the words "these are understood to embrace loss of time or loss from inability to perform ordinary labor or capacity to earn money."    This instruction seems to be a verbatim quotation from Sutherland on Damages, Vol. 3, page 261, and is fully sustained by the numerous authorities there cited.    It is also approved *in totidem verbis* in *Wallace v. Railroad,* 104 N. C., 452.

Upon a review of the whole case and all of the exceptions, we are of opinion that there is no error, and that the judgment should be

Affirmed.